UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON


CIVIL ACTION NO. 08-402-KSF

LILLIAN N. WASHINGTON                                                                    PLAINTIFF


v.                                              **OPINION & ORDER**


CITY OF GEORGETOWN, KAREN
TINGLE-SAMES, ROGELL BLANKENSHIP,
TERRY THOMAS, JAMES L. BURGESS,
and JANICE WISE                                                                          DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \*

Currently before the Court is the defendants' motion to dismiss a portion of the plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [DE #8].  This matter is fully briefed and is ripe for review.  For the reasons set forth below, the defendants' motion will be granted in part and denied in part.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts, as alleged by the plaintiff, Lillian N. Washington, are as follows. Washington, an African-American female, has been employed by the City of Georgetown as a Custodian in the Public Works Department since October 8, 1995.  On March 2, 2005, Washington filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that the City of Georgetown was discriminating against her on the basis of her race and that it had retaliated against her for engaging in protected activity during her employment.  Washington

and the City of Georgetown subsequently entered into a Conciliation Agreement on April 18, 2006.

The "General Provisions" portion of the Conciliation Agreement states as follows:

1.      Charging Party [Washington] agrees not to sue the Respondent [City of Georgetown] with respect to any allegations contained in the above-referenced charge.   EEOC agrees not to use the above-referenced charge as the jurisdictional basis for filing a lawsuit against the Respondent.   However, nothing in this Agreement shall be construed to preclude EEOC and/or any aggrieved individual(s) from bringing suit to enforce this Agreement in the event that the Respondent fails to perform the promises and representations contained herein.   Neither does it preclude the Charging Party or the Commission from filing charges in the future.

2.      The Respondent agrees that it shall comply with all requirements of Title VII.

3.      The Parties agree that there shall be no discrimination or retaliation against any individuals who participated in this investigation including filing a charge, giving testimony or giving assistance.

4.      Respondent agrees that EEOC may review compliance with this Agreement. As a part of such review, EEOC may require written reports regarding compliance, inspect Respondent's premises at reasonable times, interview employees, examine and copy relevant documents.

5.      This Agreement shall remain in full force and effect for two years from the date of execution by the Commission's representative.

Under the "Employment Policies and Practices" portion of the Conciliation Agreement, the City of

Georgetown agreed to the following:

1.      Respondent agrees to cease discriminating on the basis of race and retaliation in all phases of employment specifically including harassment and retaliation.

2.      Respondent shall maintain a policy of non-discrimination in all aspects of employment.

3.      Respondent agrees to thoroughly review its Anti-Discrimination and Harassment Policy with all employees, especially management officials, during orientation and annual training and throughout the Conciliation Agreement.   Respondent will advise in writing annually the management officials receiving the training.

4.      Respondent agrees to investigate all complaints of discrimination and harassment immediately, maintaining a record of each investigation with adequate follow-up with the person(s) filing the complaint, during and after an investigation is completed.  In addition, all future discrimination and harassment complaints received through that process will be taken seriously and investigated by Human Resources or a senior management official.  The result of each investigation will be provided to the EEOC throughout the duration of this Conciliation Agreement.  The Respondent agrees to follow its written policy regarding complaints and requests for accommodations.

With respect to Washington, the "Charging Party Relief" section of Conciliation Agreement requires that the City of Georgetown provide the following relief:

(a)      Return the Charging Party to work on Monday May 1, 2006 at a pay rate of $13.375/hr. . .

(b)      Establish a work plan which includes the Charging Party's accommodation request of no holiday decorating, no windows, no floor buffing or stripping and no lifting over 30 lbs. . .

(c)      Restore 171 hours of sick and 227.5 hours of vacation days that the Charging Party lost from November 2004 to present and restore $4,125.22 to the Charging Party's retirement.

(d)      Purge all records, memoranda and information relating to this charge from the personnel records of Charging Party, Lillian Washington and any other employees identified as witnesses or parties to this matter within 30 days of the execution of this Conciliation Agreement.

(e)      Pay Charging Party a lump sum of Seventy-three Thousand Dollars ($73,000.00) in full and complete settlement of this charge of discrimination by mailing a check made payable to Ms. Lillian Washington, by certified mail, return receipt requested, . . . within 10 days of execution of this Conciliation Agreement. . . .

[DE #1-4].  Since the effective date of the Conciliation Agreement, Washington alleges that the

defendants have violated the terms of the Conciliation Agreement in the following ways.  First,

Washington alleges that on September 8, 2006, Wise, who at the time was secretary to the Mayor of

the City of Georgetown, made a discriminatory remark to her.  Although she reported the remark to

3

City officials, Washington contends that Wise only received a verbal reprimand and was later promoted to office manager for the City's Department of Building Inspection. Second, Washington alleges that in June 2007, a City employee observed a box, belonging to Wise and allegedly in plain view, which contained Washington's Conciliation Agreement and other documents showing the status of Washington's complaint against Wise. Washington alleges that Wise had no authority to possess these documents and that leaving them out for other City employees to see violates her right to privacy. Finally, Washington alleges that her performance rating has been degraded despite taking on additional duties, including duties which exceed the scope of her Conciliation Agreement.

As a result of these allegations, Washington filed an action in Scott County Circuit Court on September 3, 2008 against the following defendants: the City of Georgetown, Karen Tingle-Sams, in her official capacity as Mayor of the City of Georgetown, Rogell Blankenship, in his official capacity as Director of Human Resources of the City of Georgetown, Terry Thomas, in his official capacity as Director of the Public Works department, James L. Burgess, in his official capacity as the Building Inspector for the City of Georgetown, and Janice Wise, in her personal capacity and her official capacity as Administrative Secretary/Office Manager in the Department of Building Inspection [DE #1-3]. Generally, Washington alleges that the defendants violated the Kentucky Civil Rights Act, KRS § 344, *et seq*., the Fifth and Fourteenth Amendments to the United States Constitution, the Kentucky Constitution, and the terms of the Conciliation Agreement. As a matter of right, on September 11, 2008 Washington filed her first amended complaint to add an additional claim under the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., based on a Notice of Right to Sue issued by the EEOC [DE #1-4]. Thereafter, the EEOC rescinded Washington's right to sue letter on September 17, 2008 [DE #1-5]. As a result, on

September 24, 2008 Washington filed her second amended complaint which voluntarily dismissed her claims dependent upon the EEOC's right to sue letter [DE #1-5].

On October 1, 2008, the defendants removed the action to this court based on federal question jurisdiction, and filed their motion to dismiss and motion for abstention [DE ##1,2]. Then, on October 8, 2008, the United States Department of Justice notified Washington of her right to institute a civil action against the defendants pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, Title I of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12111, *et seq.*, and the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621, *et seq.* [DE #5-1, 5-2, 5-3]. The Court then entered the parties' Agreed Order granting Washington ten days to file an amended complaint, and granting the defendants ten additional days to re-new their motion to dismiss and/or motion for stay/abstention [DE #4]. Washington timely filed a third amended complaint, including claims under Title VII, the ADA, and the ADEA. Washington's third amended complaint further notes that she was terminated from her employment as of November 7, 2008 [DE #5-4]. The defendants timely renewed their motion to dismiss pursuant to Rule 12(b)(6) [DE #8].

## II.     ANALYSIS

Washington's claims against Wise arise from the allegation that after execution of the Conciliation Agreement and after Washington's report to city officials that Wise made a discriminatory remark to her, a city employee observed a box beneath Wise's desk containing a "copy of Washington's Conciliation Agreement" and other "documents" that showed the "status of the discrimination complaint about Ms. Wise." Essentially, Washington asserts three causes of action against Wise: (1) invasion of privacy; (2) violation of KRS 514.070; and (3) tortious interference

with Washington's "prospective job opportunities."  The defendants now seek dismissal of all of these claims against Wise, and any claims against the other defendants based on respondeat superior, for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

### A.      MOTION TO DISMISS STANDARD

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  According to the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955 (2007), when faced with a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  *Id*. at 1964-65 (citations and quotation marks omitted).  Although a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Id*. (internal citations and quotation marks omitted).  "In so holding, the Court disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)(recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one 'best forgotten as an incomplete, negative gloss on an accepted pleading standard.'  *Twombly*, 127 S.Ct. at 1969."  *Association of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

In this case, Washington argues that the defendants' motion to dismiss is premature and that further discovery is necessary. To the extent that Washington's invasion of privacy claims are based on her argument that the Conciliation Agreement is not a public record, the Court disagrees.  As

explained below, the Conciliation Agreement is a public record, and thus, as a matter of law, her invasion of privacy claims based on the Conciliation Agreement fail to state a claim upon which relief can be granted under Kentucky law. However, since it is unclear what "other documents" were allegedly possessed and publicized by Wise, the Court will decline to dismiss Washington's claims based on these "other documents" so that further discovery may be obtained. Washington's remaining claims against Wise, based on KRS 514.070 and tortious interference with prospective job opportunities, even when construed in the light most favorable to Washington and drawing all reasonable inferences in her favor, also fail to state a claim upon which relief can be granted under Kentucky law. Thus, no additional discovery is necessary on these claims and they will be dismissed.

### B.    INVASION OF PRIVACY

Washington accuses Wise of invading her privacy by possessing and publishing the Conciliation Agreement and "other documents" related to her discrimination claim against Wise. According to Washington, the Conciliation Agreement was not intended to be a public record, and Wise had no right to possess or publish the Conciliation Agreement or "other documents."

Kentucky has adopted the general invasion of privacy principals found in the Restatement (Second) of Torts (1976). *McCall v. Courier-Journal and Louisville Times, Co.*, 623 S.W.2d 882, 887 (Ky. 1981). The Restatement (Second) of Torts, § 652A, provides as follows:

> (1)    One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.
>
> (2)     The right of privacy is invaded by
>
>> (a)    unreasonable intrusion upon the seclusion of another . . . ; or
>>
>> (b)    appropriation of the other's name or likeness . . .; or

(c)     unreasonable publicity given to the other's private life . . . ; or

(d)     publicity that unreasonably places the other in a false light before the public . . . .

*Id*.  Washington's allegations fall within the first, third, and fourth privacy torts.  The Court will address Washington's invasion of privacy claims based only on the Conciliation Agreement; Washington is entitled to further discovery with respect to the alleged possession and publication of the "other documents" relating to her discrimination claim.

### 1.     UNREASONABLE INTRUSION UPON THE SECLUSION OF ANOTHER

The first privacy tort - the unreasonable intrusion upon the seclusion of another- applies when a party "intentionally intrudes" upon the private affairs or concerns" of another and such "intrusion would be highly offensive to the reasonable person."  Restatement (Second) of Torts § 652B.  This tort includes the examination of a person's private affairs, including opening that person's private, personal mail.  The defendants argue that this tort cannot apply to the facts as alleged because the Conciliation Agreement is a public, not private, record under the Kentucky Open Records Act, KRS 61.872 *et seq.*  The Court agrees.

The Kentucky Open Records Act, KRS § 61.872, provides that "[a]ll public records shall be open for inspection by any person, except as otherwise provided by KRS 61.870 to 61.884," KRS 61.872(1), and "[a]ny person shall have the right to inspect public documents." KRS 61.872(2). KRS 61.887(1)(a) excludes "public records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy."  The Kentucky Supreme Court has explained the purpose of the Kentucky Open Records Act as follows:

> The unambiguous purpose of the Open Records Act is the disclosure of public records even though such disclosure may cause inconvenience or embarrassment. KRS. 61.871. An extensive mechanism has been created for exercise of the right of inspection and imposes upon the record custodian the duty to respond appropriately. KRS. 61.872. Public agencies are authorized to adopt rules and regulations but may not impose requirements which have the effect of thwarting access. KRS 61.876.

*Beckham v. Board of Educ. of Jefferson County, Ky.*, 873 S.W.2d 575 (Ky. 1994).

In a case similar to the matter before this Court, the Kentucky Supreme Court held "[t]here could be no viable contention that an agreement which represents the final settlement of a civil lawsuit whereby a government entity pays public funds to compensate for an injury it inflicted is not a public record." *Lexington-Fayette Urban County Government v. Lexington Herald-Leader Company*, 941 S.W.2d 469, 471 (Ky. 1997). In that case, the newspaper requested that the government disclose agreements settling lawsuits by individuals against the police department. In response, the government furnished a computer print-out showing payments made by the government in connection with the lawsuits against the police department for the preceding five years. However, the government refused to provide unredacted copies of the final settlement agreements or any other information from which the newspaper could determine the identities of the recipients of the settlements. In refusing to disclose this information, the government relied on confidentiality clauses in two of the three agreements whereby the settlement recipients and their attorneys agreed not to disclose any of the terms of the agreements.

The Supreme Court held that within the specific context of that case, "the redacted information is not of such a personal nature that its disclosure would constitute an unwarranted invasion of privacy pursuant to KRS 61.878(1)(a)." *Id*. at 472. Important considerations, according to the Supreme Court, include "the nature of the information which is the subject of the requested

disclosure" and "whether it is the type of information about which the public would have little or no legitimate interest but which would be likely to cause serious personal embarrassment or humiliation." *Id.*

In reaching this decision, the Supreme Court distinguished its earlier decision in *Kentucky Board of Examiners of Psychologists v. The Courier-Journal & Louisville Times Co.*, 826 S.W.2d 324 (Ky. 1992). In that case, the newspaper sought access to all documents relating to a psychologist who had been charged with sexually abusing his clients. Concluding that the personal privacy provision of KRS 612.878(a)(1) was applicable, the Supreme Court noted that the requested information, including details of sexual misconduct committed against the clients of the psychologist, touches upon the most intimate and personal features of private life. *Id.* at 328.

The Court also considered *Beckham v. Board of Education of Jefferson County*, 873 S.W.2d 575 (Ky. 1994), where it previously held that the Board of Education employees had standing to challenge the release of their personnel records on the grounds that the release of such information might constitute an unwarranted invasion of personal privacy. The Supreme Court "recognized that the personal privacy exclusion was of sufficient importance to overcome the disclosure bias of the Act and that public interest and public curiosity were not always synonymous." *Id.* at 578-79.

Finally, in *Zink v. Commonwealth*, 902 S.W.2d 825 (Ky.App.1994), the Kentucky Court of Appeals considered whether a request by an attorney for access to an instrument filed pursuant to the Workers Compensation Act known as the "Employer's First Report of Injury," which contains details of the injury sustained by the worker as well as other personal information falls within an exclusion under the Kentucky Open Records Act. The appellate court concluded that the public interest in

disclosure was *de minimus* and that release of the information would significantly compromise the privacy of the injured worker. *Id*. at 828.

With these cases in mind, the Court now turns to the Concilation Agreement itself. The document does not contain a confidentiality section, but it does provide that the City was to "[p]urge all records, memoranda and information relating to this charge from the personnel records . . . within 30 days of execution. . . ." [DE #1-3]. While this clause certainly requires the Conciliation Agreement to be removed from Washington's personnel file, its does not remove the document from the realm of the City's public records. Moreover, the Conciliation Agreement is a settlement involving the payment of public funds, which, as the Supreme Court has expressly held, should remain a public record. *Lexington-Fayette Urban County Government v. Lexington Herald-Leader Company, supra.* To the extent that the Conciliation Agreement contains personal information including Washington's salary and accommodations, the Court finds that the disclosure of this information is not an unwarranted invasion of her privacy such that it would be highly offensive to the reasonable person. Thus, the Conciliation Agreement is a public record under Kentucky law.[1]

Certainly, Wise did not intrude into Washington's right of seclusion by possessing a public record. Restatement (Second) of Torts § 652B (1976), comment c. *See also Bell v. Courier-Journal and Louisville Times Co.*, 402 S.W.2d 84, 88 (Ky. 1966)(finding no cause of action for "invasion of the right of privacy" where the disclosed information was a "public record"). Accordingly, Washington's claim against Wise for unreasonable intrusion upon the seclusion of another based on

---

[1] Washington's argument that the Conciliation Agreement was confidential based on City policy, and that Wise's alleged possession of the Conciliation Agreement amounts to a violation of City policy, does not impact the fact that the Conciliation Agreement is a public record under KRS 61.872.

her alleged possession of her Conciliation Agreement fails as a matter of law, and therefore, the Court will grant the defendants' motion to dismiss this claim pursuant to Rule 12(b)(6).

### 2.   UNREASONABLE PUBLICITY GIVEN TO ANOTHER PERSON'S PRIVATE LIFE

Washington's claims against Wise also implicate the privacy tort of unreasonable publicity given to another person's private life.  Unreasonable publicity given to another person's private life occurs when a party publicizes a matter that would be highly offensive to a reasonable person" and "is not a legitimate concern to the public."  Restatement (Second) of Torts § 652D (1976).   This claim, however, is also based on Washington's allegation that Wise publicized the Conciliation Agreement.  However, because the Conciliation Agreement is a public record, Washington's claim based on unreasonable publicity given to her private life fails as a matter of law.  Accordingly, the Court rejects Washington's arguments and will grant the defendants' motion to dismiss this claim against Wise.

### 3.   PUBLICITY THAT PLACES ANOTHER PERSON IN A FALSE LIGHT

Finally, Washington's claims against Wise implicate the privacy tort of publicity that places the other before the public in a false light.  According to the Restatement (Second) of Torts § 652D, liability for this tort occurs if "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Washington, however, has failed to allege that anything contained in the Conciliation Agreement was false.  Thus, as a matter of law, she cannot succeed on this claim.  Accordingly, the Court will dismiss

Washington's claims against Wise based on the privacy tort of publicity that places another before the public in a false light.

### C. KRS 514.070

By allegedly possessing and/or publicizing the Conciliation Agreement, Washington also alleges that Wise violated KRS § 514.070, "Theft by failure to make required disposition of property," which provides as follows:

> A person is guilty of theft by failure to make required disposition of property received when:
> (a)  He obtains property upon agreement or subject to a known legal obligation to make specified payment or other disposition whether from such property or its proceeds or from his own property to be reserved in equivalent amount; and
>
> (b)  He intentionally deals with the property as his own and fails to make the required payment or disposition.

KRS. § 514.070. This provision is inapplicable because the Conciliation Agreement is a public record. As a public record, Wise had no obligation to make any "required payment or disposition" to Washington for the Conciliation Agreement. The statute is simply inapplicable to Washington's claims against Wise. Therefore, the defendants' motion to dismiss Washington's claim under KRS § 514.070 will be granted.

### D. TORTIOUS INTERFERENCE WITH PROSPECTIVE JOB OPPORTUNITIES

Washington's final claim against Wise is for tortious interference with her prospective job opportunities by conveying information to others that adversely affected her job duties and performance ratings. Washington has alleged that subsequent to the execution of the Conciliation Agreement, her appraisal rating plummeted and that she was assigned additional job duties which exceed the scope of the Conciliation Agreement. However, she has made no allegation with respect

Case: 5:08-cv-00402-KSF-REW  Doc #: 13  Filed: 03/03/09  Page: 14 of 15 - Page ID#: 318

to any prospective job opportunity. In evaluating a Rule 12(b)(6) motion, the Court need not accept these bare legal conclusions. *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955 (2007). Based on a review of Washington's complaints, the Court cannot find any facts from which she could succeed on this claim. Accordingly, the defendants' motion to dismiss Washington's claims against Wise for tortious interference with prospective job opportunities will be granted.

### E.  RESPONDEAT SUPERIOR

Finally, the defendants move the Court to dismiss with prejudice any related claims against the other defendants based on a claim for respondeat superior. Respondeat superior typically applies in cases where vicarious liability for civil rights violations is sought to be imposed on a superior under circumstances giving rise to a claim under 42 U.S.C. § 1983. The defendants have failed to explain how respondeat superior is applicable to the motion currently before the Court. Accordingly, the defendants' motion to dismiss based on the doctrine of respondeat superior will be denied without prejudice.

### III.  CONCLUSION

For the reasons set forth below, the Court, being fully and sufficiently advised, **ORDERS** as follows:

(1)  the defendants' motion to dismiss [DE #8] is **GRANTED IN PART** to the extent that the following claims are **DISMISSED** for failure to state a claim upon which relief can be granted under Rule 12(b)(6):

(a)  Washington's claims against Wise in her personal capacity for unreasonable intrusion upon the seclusion of another and unreasonable publicity given to another person's private life, to the extent that this claims is based on the Conciliation Agreement;

(b)     Washington's claims against Wise in her personal capacity for invasion of her privacy based on unreasonable publicity given to her private life, to the extent that this claim is based on the Conciliation Agreement;

(c)     Washington's claim against Wise in her personal capacity for invasion of her privacy based on publicity that unreasonably places her in a false light, to the extent that this claim is based on the Conciliation Agreement;

(d)     Washington's claims against Wise in her personal capacity for violation of KRS § 514.070;

(e)     Washington's claims against Wise in her personal capacity for tortious interference with prospective job opportunities;

(2)     the defendants' motion to dismiss Washington's claims against the remaining defendants based on respondeat superior is **DENIED WITHOUT PREJUDICE**; and

(3)     the defendants' motion to dismiss is **DENIED IN ALL OTHER RESPECTS**. Washington's invasion of privacy claims against Wise based on her alleged possession and publication of certain "other documents," as well as Washington's claims against the other defendants, **REMAIN PENDING**.

This March 3, 2009.

Signed By:

*Karl S. Forester* K S F

**United States Senior Judge**