UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-402-KSF

LILLIAN N. WASHINGTON                                                    PLAINTIFF

v.                                          **OPINION & ORDER**

CITY OF GEORGETOWN, KAREN
TINGLE-SAMES, ROGELL BLANKENSHIP,
TERRY THOMAS, JAMES L. BURGESS,
and JANICE WISE                                                        DEFENDANTS

* * * * * * * * * * * * *

Currently before the Court are the parties' cross motions for summary judgment [DE ##43

and 45]. These motions are fully briefed and are ripe for review.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

The plaintiff, Lillian N. Washington, is an African-American female who was born June 30,

1956. She was employed by the City of Georgetown as a Custodian in the Public Works Department

beginning October 8, 1995. On March 2, 2005, Washington filed charges of discrimination with the

Equal Employment Opportunity Commission ("EEOC") alleging that the City of Georgetown was

discriminating against her on the basis of her race and that it had retaliated against her for engaging

in protected activity during her employment. Washington and the City of Georgetown subsequently

entered into a Conciliation Agreement on April 18, 2006 [DE #44-2]. The "General Provisions"

portion of the Conciliation Agreement states as follows:

1.      Charging Party [Washington] agrees not to sue the Respondent [City of
        Georgetown] with respect to any allegations contained in the above-
        referenced charge. EEOC agrees not to use the above-referenced charge as

the jurisdictional basis for filing a lawsuit against the Respondent. However, nothing in this Agreement shall be construed to preclude EEOC and/or any aggrieved individual(s) from bringing suit to enforce this Agreement in the event that the Respondent fails to perform the promises and representations contained herein. Neither does it preclude the Charging Party or the Commission from filing charges in the future.

2. The Respondent agrees that it shall comply with all requirements of Title VII.

3. The Parties agree that there shall be no discrimination or retaliation against any individuals who participated in this investigation including filing a charge, giving testimony or giving assistance.

4. Respondent agrees that EEOC may review compliance with this Agreement. As a part of such review, EEOC may require written reports regarding compliance, inspect Respondent's premises at reasonable times, interview employees, examine and copy relevant documents.

5. This Agreement shall remain in full force and effect for two years from the date of execution by the Commission's representative.

Under the "Employment Policies and Practices" portion of the Conciliation Agreement, the City of

Georgetown agreed to the following:

1. Respondent agrees to cease discriminating on the basis of race and retaliation in all phases of employment specifically including harassment and retaliation.

2. Respondent shall maintain a policy of non-discrimination in all aspects of employment.

3. Respondent agrees to thoroughly review its Anti-Discrimination and Harassment Policy with all employees, especially management officials, during orientation and annual training and throughout the Conciliation Agreement. Respondent will advise in writing annually the management officials receiving the training.

4. Respondent agrees to investigate all complaints of discrimination and harassment immediately, maintaining a record of each investigation with adequate follow-up with the person(s) filing the complaint, during and after an investigation is completed. In addition, all future discrimination and harassment complaints received through that process will be taken seriously and investigated by Human Resources or a senior management official. The

2

result of each investigation will be provided to the EEOC throughout the duration of this Conciliation Agreement. The Respondent agrees to follow its written policy regarding complaints and requests for accommodations.

The "Charging Party Relief" section of Conciliation Agreement requires that the City of Georgetown provide the following relief:

(a) Return the Charging Party to work on Monday May 1, 2006 at a pay rate of $13.375/hr. . .

(b) Establish a work plan which includes the Charging Party's accommodation request of no holiday decorating, no windows, no floor buffing or stripping and no lifting over 30 lbs. . .

(c) Restore 171 hours of sick and 227.5 hours of vacation days that the Charging Party lost from November 2004 to present and restore $4,125.22 to the Charging Party's retirement.

(d) Purge all records, memoranda and information relating to this charge from the personnel records of Charging Party, Lillian Washington and any other employees identified as witnesses or parties to this matter within 30 days of the execution of this Conciliation Agreement.

(e) Pay Charging Party a lump sum of Seventy-three Thousand Dollars ($73,000.00) in full and complete settlement of this charge of discrimination by mailing a check made payable to Ms. Lillian Washington, by certified mail, return receipt requested, . . . within 10 days of execution of this Conciliation Agreement. . . .

[DE #44-3].

Washington returned to work for the City of Georgetown in May 2006. She alleges that since that time, she has been discriminated and retaliated against on the basis of her race, age, disability, and that her co-worker, Janice Wise, has invaded her privacy. Specifically, Washington contends that on September 8, 2006, Wise, who at the time was secretary to the Mayor of the City of Georgetown, made a discriminatory remark to her. Although she reported the remark to City officials, Washington contends that Wise only received a verbal reprimand and was later promoted

to office manager for the City's Department of Building Inspection. Washington also contends that in June 2007, a City employee observed a box, belonging to Wise and allegedly in plain view, which contained Washington's Conciliation Agreement and other documents showing the status of Washington's complaint against Wise. Washington alleges that Wise had no authority to possess these documents and that leaving them out for other City employees to see violates her right to privacy. Additionally, Washington contends that her performance rating has been degraded despite taking on additional duties, including duties which exceed the scope of her Conciliation Agreement.

As a result of these allegations, Washington filed this civil action in Scott County Circuit Court on September 3, 2008 against the following defendants: the City of Georgetown, Karen Tingle-Sams, in her official capacity as Mayor of the City of Georgetown, Rogell Blankenship, in his official capacity as Director of Human Resources of the City of Georgetown, Terry Thomas, in his official capacity as Director of the Public Works department, James L. Burgess, in his official capacity as the Building Inspector for the City of Georgetown, and Janice Wise, in her personal capacity and her official capacity as Administrative Secretary/Office Manager in the Department of Building Inspection [DE #1-3]. Generally, Washington alleges that the defendants violated the Kentucky Civil Rights Act, KRS § 344, *et seq*., the Fifth and Fourteenth Amendments to the United States Constitution, the Kentucky Constitution, and the terms of the Conciliation Agreement. As a matter of right, on September 11, 2008 Washington filed her first amended complaint to add an additional claim under the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., based on a Notice of Right to Sue issued by the EEOC [DE #1-4]. Thereafter, the EEOC rescinded Washington's right to sue letter on September 17, 2008 [DE #1-5].

As a result, on September 24, 2008 Washington filed her second amended complaint which voluntarily dismissed her claims dependent upon the EEOC's right to sue letter [DE #1-5].

On October 1, 2008, the defendants removed the action to this court based on federal question jurisdiction, and filed their motion to dismiss and motion for abstention [DE ##1,2]. Then, on October 8, 2008, the United States Department of Justice notified Washington of her right to institute a civil action against the defendants pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., Title I of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12111, *et seq.*, and the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621, *et seq.* [DE #5-1, 5-2, 5-3]. As a result, the Court then entered the parties' Agreed Order granting Washington ten days to file an amended complaint, and granting the defendants ten additional days to renew their motion to dismiss and/or motion for stay/abstention [DE #4]. Washington timely filed a third amended complaint, including claims under Title VII, the ADA, and the ADEA. Washington's third amended complaint further notes that she was terminated from her employment as of November 7, 2008 and includes an additional claim for retaliation [DE #5-4].

Washington's termination was part of the City of Georgetown's November 2008 reduction in force ("RIF"), necessitated by revenue shortfalls and budget deficits, which resulted in the elimination of nine positions, including Washington's and the City of Georgetown's two other custodial positions. After the November 2008 RIF, no custodial positions remained. The November 2008 RIF was followed by the eliminating of ten more positions in February 2009, a hiring freeze for vacant positions, the requirement that all City employees pay 10% of the health insurance premiums, the elimination of some paid holidays, and funding cuts for charitable organizations, development agencies, and joint City-County agencies.

The defendants timely renewed their motion to dismiss pursuant to Rule 12(b)(6) [DE #8]. Specifically, the defendants moved to dismiss Washington's claims against Wise for invasion of privacy, violation of KRS 514.070, and tortious interference with Washington's prospective job opportunities as well as any claims against the other defendants based on respondeat superior. By Opinion & Order of March 3, 2009, the Court granted in part and denied in part the defendants' motion to dismiss [DE #13]. Specifically, the Court dismissed the following claims against Wise: (1) intrusion upon the seclusion of another and unreasonable publicity given to another person's private life, to the extent that this claim is based on the Conciliation Agreement; (2) invasion of privacy based on unreasonable publicity given to her private life, to the extent that this claim is based on the Conciliation Agreement; (3) invasion of privacy based on publicity that unreasonably places her in a false light, to the extent that this claim is based on the Conciliation Agreement; (4) violation of KRS 514.070; and (5) tortious interference with prospective job opportunities. The Court denied the defendants' motion to dismiss Washington's claims against the remaining defendants based on respondeat superior without prejudice. The defendants' motion to dismiss was denied in all other respects. Washington's claims against Wise based on her alleged possession and publication of certain "other documents," as well as Washington's claims against the other defendants, remain pending. The parties then filed the pending motions for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts."  *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).  Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment.  *Id.* at 343.  "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 249-50 (citations omitted).

## III.   ANALYSIS

### A.   RELEASE OF CLAIMS BASED ON CONCILIATION AND RESOLUTION OF 2005 EEOC CHARGE

In 2005, Washington filed her claim with the EEOC, claiming race and disability discrimination, harassment by her coworkers and former supervisor Steve Gravitt, hostile work environment, and retaliation.  In consideration for $73,000 plus other "Charging Party Relief"

7

specified in the Conciliation Agreement, Washington signed a Release whereby she agreed to waive any claims "growing out of or connected with, directly or indirectly, the allegations contained in" her EEOC charge. The defendants argue that they are entitled to summary judgment on any federal or state claims or any conduct directly or indirectly related to the allegations in her 2005 EEOC charge.

On the other hand, Washington contends that the defendants have failed to comply with the agreement, and cite to clause one of the "General Provisions" of the Conciliation Agreement, which provides:

> [N]othing in this Agreement shall be construed to preclude EEOC and/or any aggrieved individual(s) from bringing suit to enforce this Agreement in the event that the Respondent fails to perform the promises and representations contained herein.

[DE #44-2, clause 1] Additionally, Washington notes that the agreement provides that it "shall remain in full force and affect for two years from the date of execution by the Commission's representative" [DE#44-2, clause 5]. Because the Conciliation Agreement was executed by all parties on April 18, 2006 and Washington did not file suit until September 3, 2008, she argues that there is no bar to using evidence of her claims in the 2005 EEOC charge to show continuing acts of racial and sexual discrimination as part of a hostile work environment claim.

As pointed out by the defendants, however, the Release executed by Washington clearly bars any federal or state claims predating the Release. Specifically, the Release provides in pertinent part:

> For and in consideration of Seventy Three Thousand Dollars and Zero Cents ($73,000.00) in hand paid by the St. Paul Fire and Marine Insurance Company, the receipt of which is hereby acknowledged, and fulfilling the "CHARGING PARTY RELIEF" stated in the April 18, 2006 Conciliation Agreement reached between the City of Georgetown and myself, I, Lillian Washington, do hereby fully and finally release, acquit and forever discharge the City of Georgetown, its current and former employees in their individual and official capacities, St. Paul Fire and Marine

Insurance Company, and each of their respective heirs, administrators, executors, agents, assigns, servants, employees, representatives, affiliates, partners, predecessors and successors in interest (hereinafter "Released Parties") from any and all claims, demands, actions, or causes of action of any kind or description whatsoever, whether arising out of contract, tort or otherwise, in law or in equity, which I now have or may have in the future for any and all damages, losses, fees, costs, expenses, and compensation of any nature whatsoever arising or to arise from or in any way growing out of or connected with, directly or indirectly, the allegations contained in the U.S. Equal Employment Opportunity Commission Charge No. 241-2005-00719. . . .

[DE #44-3].  Thus, to the extent that Washington intends to base any of her federal or state claims or any conduct directly or indirectly related to the allegations in her 2005 EEOC charge, the Release applies and bars those claims.  The defendants thus are entitled to summary judgment on any of Washington's claims based on conduct growing out of or connected with, directly or indirectly, the allegations contained in the 2005 EEOC charge.

## B.    STATUTE OF LIMITATIONS

Next, the defendants argue that many of Washington's claims brought pursuant to Title VII, ADA, ADEA, and the Equal Protection Clause via 42 U.S.C. § 1983 are barred by the statute of limitations.  To recover under Title VII, the ADA, or the ADEA, a plaintiff must file a timely charge with the EEOC.  *Amini v. Oberlin College*, 259 F.3d 493, 498 (6th Cir. 2001).  A 300-day filing limitation is applicable for Kentucky cases.  *Jones v. AIRCO Carbide Chemical Co.*, 691 F.2d 1200, 1201 (6th Cir. 1982).  Cases brought pursuant to § 1983 must be filed within one year.

Here, Washington filed her EEOC charge and this action on the same date, September 3, 2008.  The following incidents occurred outside both Title VII's 300-day limitation period and § 1983's one-year limitation period:

(1)    the terms of Washington's accommodations, which were negotiated in April 2006;

(2)     the "cooking" comment by Janice Wise, which allegedly occurred in September 2006;

(3)     Washington's increased work assignments at the Bradshaw property and the Beautification office, which were assigned during the summer of 2007; and

(4)     Washington's failure to promote claim since she has not timely applied for any promotions or positions.

Washington argues that because the defendants have breached the Conciliation Agreement and engaged in a pattern of continuing violations, this evidence is not barred by the statute of limitations. To the extent that Washington is asserting a cause of action for breach of the Conciliation Agreement, her claim is untimely and has not been administratively exhausted. While Washington apparently filed a new EEOC charge in January 2010 which is currently pending, that charge was filed more than 300 days after the Conciliation Agreement's two-year term expiring April 18, 2008. Thus, any claim based on breach of the Conciliation Agreement is not properly before the Court.

Additionally, Washington argues that these incidents should be admissible to show a pattern or practice of discrimination. However, the Sixth Circuit has held that "the pattern-or-practice method of proving discrimination is not available to individual plaintiffs . . . because it does not address individual hiring decisions." *Bacon v. Honda of America, Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004). A pattern-or-practice claim is "focused on establishing a policy of discrimination," which is not what is alleged in this case. *Id.*

Nevertheless, in *Bacon*, the Sixth Circuit noted that "pattern-or-practice evidence may be relevant to proving an otherwise-viable individual claim for disparate treatment under the *McDonnell Douglas* framework. *Id.* This exception, however, does not solve Washington's statute of limitations dilemma. Thus, to the extent that Washington seeks to rely on any incident which occurred more

than 300 days in the case of Title VII, the ADA, or the ADEA or one year for her § 1983 claim, prior to the filing of her EEOC charge, the statute of limitations bars such evidence.

## C.    DISPARATE TREATMENT

Both parties have moved for summary judgment on Washington's claims for disparate treatment and discriminatory conduct. Although Washington's claims are based on 42 U.S.C. § 1981, violation of her due process and equal protection rights pursuant to 42 U.S.C. § 1983, the Kentucky Civil Rights Act ("KCRA"), as well as Title VII, the courts in the Sixth Circuit use the framework and standards of Title VII when analyzing all of these discrimination claims.  *See Johnson v. University of Cincinnati*, 215 F.3d 561, 573 n. 5 (6th Cir. 2000)(applying Title VII burden of proof to claims under § 1981); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 577 (6th Cir. 2004)(applying Title VII burden of proof to claims under § 1983); *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir .2000)(applying Title VII burden of proof to KCRA).

Under the tripartite burden-shifting approach established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981), Washington bears the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence.  To establish a claim of *prima facie* employment discrimination, Washington bears the burden of showing that she: (1) is a member of a protected class; (2) was qualified for the job; (3) suffered an adverse employment decision; and (4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees.  *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008).

After establishing a *prima facie* case, "the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Canitia v. Yellow*

*Freight Sys. Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990)(quoting *McDonnell Douglas*, 411 U.S. at 802). "The plaintiff, who bears the burden of persuasion throughout the entire process, then must demonstrate 'that the proffered reason was not the true reason for the employment decision.'" *Id.*(quoting *Texas Dep't of Cmty Affairs*, 450 U.S. at 256).

Washington's disparate treatment claims are based on a glut of workplace complaints and grievances, many of which involve other employees. However, for each complaint, she has failed to show at least one necessary component of a *prima facie* case of employment discrimination. Each of Washington's complaints are analyzed below.

### 1. WISE'S COOKING COMMENT TO WASHINGTON AND HER RESULTING INADEQUATE PUNISHMENT

According to Washington, in September 2006 she was cooking food in the basement of City Hall when defendant Wise told her "Well, if I was your supervisor, I wouldn't - you wouldn't be eating up in here. I wouldn't let you eat and you wouldn't be cooking nothing either." Washington contends that Wise had never made similar comments to white employees. However, Wise was not Washington's supervisor and her comment did not actually result in preventing Washington from using the cooking facilities. Wise was ultimately verbally reprimanded by Mayor Varney for her comment, and was ultimately transferred to another department in early 2007. The Court has already held that this incident cannot be considered because Washington failed to file her EEOC charge or this action within the applicable statute of limitations period.

To the extent that Washington bases her claim on the alleged inadequacy of Wise's punishment resulting from this incident, her subjective disagreement with Mayor Varney's punishment fails to state a claim. The disciplinary action taken against another employee does not

change the terms or conditions of Washington's employment.  *Broska v. Henderson*, 70 Fed. Appx 262, 267 (6th Cir. 2003).

## 2.    PERFORMANCE APPRAISAL

In the summer of 2007, Terry Thomas became the new Public Works Director and thus was Washington's supervisor.  On October 31, 2007, Washington received her first performance appraisal from Thomas.  Her 2007 score, 38 out of 60, fell within the "good performance" range, but was lower than her 2006 score, 48 out of 60, which fell at the bottom of the "excellent work" range. Washington contends that this appraisal is an adverse employment decision and that it was never satisfactorily explained to her why it was less than the previous year.

The fact that Washington received a lower, but still positive, performance appraisal does not amount to an adverse employment decision.  According to the Sixth Circuit, claims based upon similar "mid-range" performance evaluations are "not the type of adverse employment action contemplated by Title VII."  *Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999).  Washington has not shown that the 2007 appraisal adversely affected any "material" terms or conditions of her employment, such as her salary, or that it factored into the November 2008 RIF.  Nor has Washington shown how the defendants' alleged failure to explain the score amounted to discrimination.  Accordingly, the defendants are entitled to summary judgment on this claim.

## 3.    BRADSHAW PROPERTY

As additional evidence of disparate treatment, Washington points to the "Bradshaw property," a historic estate in Georgetown which is owned by the City.  Washington claims that this was formerly known as the "Slave Mansion," and that Mayor Tingle-Sames required her to clean the entire building.  She notes that William Murphy, a white, male Public Works employee was allowed

to reside rent-free for approximately three years. Washington claims that this is evidence of disparate treatment. According to the defendants, Murphy was allowed to live in the Bradshaw estate in an effort to prevent vandalism on the property.

To the extent that she was required to clean the Bradshaw property more than 300 days (or one year for her §1983 claim) prior to the EEOC filing, the Court has already determined that this evidence is barred by the statute of limitations. However, even if the Court were to allow this evidence, Washington has failed to establish how this amounts to disparate treatment. Assuming that the failure to provide Washington rent-free housing amounts to an adverse employment decision, she has not come forward with any evidence that Murphy is in any way similarly situated to her. The mere fact that one City employee was allowed to live rent free in the Bradshaw property does not establish a *prima facie* case of disparate treatment.

### 4.     INCREASED WORK RESPONSIBILITIES

To the extent that Washington is alleging employment discrimination based on increased work responsibilities, she fails to establish a *prima facie* case of discrimination. Washington does not allege that she was ever formally disciplined, but she does claim that she was given onerous tasks over and above her previous duties prior to the Conciliation Agreement. Before she took medical leave and filed her 2005 EEOC charge, Washington primarily worked as a custodian for City Hall. After the 2005 EEOC charge was resolved and she returned to work on May 1, 2006, she contends that Mayor Tingle-Sames was displeased with her, "dumped" the additional duties on her, and even joked that she was trying to "kill" Washington with all the tasks.

Upon her return to work in 2006, Washington was assigned to clean the Public Works office, and later was assigned the Cemetery office, the Bradshaw property, and the Beautification office.

Necessarily, her job changed as a result of the work restrictions in the Conciliation Agreement. However, "job changes that do not change one's salary, benefits, title, or work hours usually do not constitute adverse employment actions, even if one's job becomes significantly more difficult." *Broska,* 70 Fed.Appx at 267. Even if the duties assigned to Washington amount to some form of adverse employment action, the City has come forward with a legitimate, nondiscriminatory reason for the change in duties: due to work restrictions which eliminated a substantial portion of her regular duties prior to the Conciliation Agreement, Washington was assigned to clean these additional locations to fully utilize her time. Mayor Tingle-Sames' alleged isolated comment, that she was trying to "kill" Washington by implementing the new duties, alone cannot show the pretext necessary to satisfy Washington's burden. Thus, the defendants are entitled to summary judgment on Washington's claims based on increased work responsibilities.

### 5.    DISPARATE DISCIPLINE

Washington also asserts a claim for discrimination based on disparate discipline. Specifically, she complains that Wise received less punishment that an African American female who violated the same City policy on confidentiality and different punishment from Ron Hoffman, who apparently made racial comments. However, Washington's displeasure with the form of punishment Wise or Hoffman received cannot form a basis for her disparate discipline claim. Thus, the defendants are entitled to summary judgment on this claim.

### 6.    FAILURE TO HIRE OR PROMOTE

To the extent that Washington asserts a failure to hire or promote claim, she also has not established a *prima facie* case of discrimination. Washington was hired by the City in 1995, and has not applied for any positions or promotions. Moreover, the evidence reveals that when she began

her employment in 1995, her pay rate was $6.73 per hour, and when she was terminated in 2008, her pay rate had increased to $15.32 per hour. Her concerns about other minority applicants simply does not satisfy her burden. *See Pedreira v. Kentucky Baptist Homes for Children, Inc.*, 579 F.3d 722, 727 (6th Cir. 2009).

## 7.      DISPARATE ACCOMMODATIONS

In support of her disparate accommodations claim, Washington alleges that white, male Public Works employees with medical restrictions "were permitted very light duty and minimal responsibilities" compared to the duties required of her and given her medical restrictions. The defendants move for summary judgment on this claim on the grounds that these non-protected Public Works employees are not similarly situated as Washington for the following reasons. Washington's restrictions were negotiated through the conciliation process with the EEOC, involving different decisionmakers and participants. Moreover, the Public Works employees which Washington compares herself to hold different jobs and have different medical restrictions than she does. In her response, Washington fails to come forward with any evidence to contradict the defendants' argument that they are not similarly situated. Accordingly, the defendants are entitled to summary judgment on Washington's claim for disparate accommodations.

## 8.      "CONFIDENTIAL" DOCUMENTATION

Washington alleges that the City discriminated against her by failing to keep "confidential" her Conciliation Agreement and documents pertaining to her complaint against Wise. However, as this Court has previously held, the Conciliation Agreement is a public record under Kentucky law [DE #13]. Any claim of discrimination, then, cannot be based on the allegation that another employee had a copy of this public record.

## 9. DISPARATE IMPACT

Washington moves for partial summary judgment on her disparate impact claim. She alleges that her November 2008 termination had a "disparate impact" on African-American females. However, as the defendants argue, Washington has not previously pled this claim. At this late date, Washington cannot invoke this distinct theory of discrimination. *Reminder v. Roadway Exp., Inc.*, 215 Fed.Appx 481, 485 (6th Cir. 2007). Even if allowed to proceed, Washington cannot show the defendants employed any "facially neutral employment practice" falling "more harshly on one group than another," *Dunlap v. Tennessee Valley Authority*, 519 F.3d 626, 629 (6th Cir. 2008), in light of the undisputed fact that Washington was the only African-American female included in the RIF and was terminated along with other white employees. Therefore, Washington's motion for partial summary judgment on her disparate impact claim will be denied.

## 10. DISCRIMINATORY ATMOSPHERE

Washington points to numerous alleged discriminatory remarks and misconduct as evidence of a discriminatory atmosphere. However, the law is clear - in order to be admissible, discriminatory remarks must be made by the official who made the "ultimate decision" and other officials who "played a meaningful role" or "may have influenced the decision." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354-55 (6th Cir. 1998). Discriminatory statements by non-decisionmakers are only admissible if a "discriminatory atmosphere" has influenced management and the "employer's decision-making process." *Id*.

Here, the evidence is clear that the decision to eliminate Washington and the eight other employees' positions in November 2008 was made by Mayor Tingle-Sames. Other than Mayor Tingle-Sames' comment that she was trying to "kill" Washington by imposing certain duties upon

her, which Washington admits was made in a joking fashion, Washington has failed to come forward with any other discriminatory statements made by Mayor Tingle-Sames. Washington then attempts to point to the following statements by non-decisionmakers to prove the discriminatory atmosphere: (1) a police officer having a perceived racially offensive computer screensaver; (2) Wise's alleged use of the "N" word; (3) Public Works supervisor Danny Cook allegedly making discriminatory comments about Terry Thomas and Thomas' wife; (4) former Public Works supervisor Ron Hoffman commenting that "monkeys can't learn"; and (5) other unidentified and unquantified "racial slurs" allegedly used by the Public Works employees. However, Washington has not come forward with any evidence of how these comments affected Mayor Tingle-Sames' decisionmaking. Without any evidence of some relationship between these alleged comments and Mayor Tingle-Sames' decision, Washington cannot show that her termination was influenced by a "discriminatory atmosphere." Thus, the defendants are entitled to summary judgment on Washington's claims based on discriminatory atmosphere.

### D.    HOSTILE WORK ENVIRONMENT

Washington also asserts a hostile work environment claim. To succeed on this claim, she must establish: (1) that she is a member of a protected class; (2) that she was subjected to unwelcome racial harassment; (3) the harassment was based on race; and (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable. *Barrett v. Whirlpool Co.*, 556 F.3d 502, 515 (6th Cir. 2009). According to the Supreme Court, the racially offensive conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986). In making this

determination, courts consider the following factors: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993). The standard is high, and "offhand comments" and "isolated incidents" are insufficient to change the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). In considering whether the racially offensive conduct amounts to a hostile work environment, there is both an objective and subjective component that must be satisfied. "The conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." *Black v. Zaring Homes*, 104 F.3d 822, 826 (6th Cir. 1997).

In support of her hostile work environment claim, Washington cites the following incidents: the cooking comment by Wise; when she asked Mayor Tingle-Sames whether the City was "trying to kill" her and the Mayor jokingly replied yes; being asked to clean the Bradshaw property; and the Mayor's assistant allegedly "throwing" a wastebasket at her. As explained earlier, the cooking comment evidence is barred by the statute of limitations. However, even accepting Washington's interpretation of the events for purposes of this summary judgment motion, the alleged conduct is not "sufficiently severe or pervasive to alter the conditions of [Washington's] employment and create an abusive working environment." *Meritor Savings Bank*, 477 U.S. at 67. The incidents were isolated and infrequent, ranging from the summer of 2006 until November 2008. While the "offhand comments" and "isolated incidents" were offensive to Washington, from an objective standpoint they could not have unreasonably interfered with her work performance. Washington has simply failed

to meet the standard for a hostile work environment claim. Accordingly, the defendants' motion for summary judgment on this claim will be granted.

### E. DISABILITY DISCRIMINATION

Washington asserts a claim for alleged violations of the Americans with Disabilities Act ("ADA"). In order to succeed on this claim, Washington must show that she is: (1) a disabled person within the meaning of the Act; (2) otherwise qualified to perform the essential functions of her job with or without reasonable accommodations; and (3) suffered an adverse employment decision due to her disability. *Sullivan v. River Valley School Dist.*, 197 F.3d 804, 810 (6th Cir. 1999). Courts employ the *McDonnell Douglas* tripartite burden shifting analysis to ADA claims.

The defendants argue that Washington cannot show that she is disabled under the applicable law. Washington has failed to come forward with any evidence in support of this claim. Accordingly, the defendants' motion for summary judgment on Washington's ADA claim will be granted.

### F. AGE DISCRIMINATION

Washington also asserts a claim for age discrimination. In order to succeed on an age discrimination claim, Washington must show: (1) she is a member of a protected class (over 40 years of age); (2) she was qualified for the position; (3) the defendants subjected her to an adverse employment action; and (4) the defendants did not subject similarly situated persons outside the protected class to such adverse action. *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 940 (6th Cir. 1987); *Kesselring v. United Technologies Corp.*, 753 F.Supp. 1359, 1364 (S.D.Ohio 1991). Once a *prima facie* case is established, the Court then applies the *McDonnell Douglas* burden shifting analysis.

The defendants argue that Washington has failed to establish a *prima facie* case of age discrimination. The Court agrees. Washington has failed to point to any *similarly situated* workers outside the protected class who were not terminated. Instead, Washington points to heavy equipment operators and sanitation or maintenance workers despite the fact that her work restrictions prohibit her from performing these types of jobs. Without any evidence that similarly situated workers outside the protected class were treated differently, Washington's age discrimination claim cannot succeed.

### G.    TERMINATION

In addition to her claims of disparate treatment, Washington also claims that the defendants discriminated against her by terminating her employment. Whether proceeding under Title VII, the Fourteenth Amendment, 42 U.S.C. § 1981, or KCRA, the court again analyzes this claims though the *McDonnell Douglas* burden shifting framework.

Washington was terminated in November 2008 as part of a reduction in force ("RIF") whereby the City eliminated nine positions, including the City's other two custodians. In RIF cases, where employees are not replaced, courts have modified the fourth *prima facie* element so that Washington must show that the City singled her out for discharge for impermissible reasons. *Barnes v. GenCorp., Inc.*. 896 F.2d 1457, 1464 (6th Cir. 1990).

Washington cannot point to any evidence that she was terminated for impermissible reasons. However, even if she were able to set out a *prima facie* case of wrongful termination, the City has come forward with legitimate, non-discriminatory reasons for the termination. As part of the November 2008 RIF, the City cut all its custodial positions (Washington and two female, white custodians), as well as six more positions filled by white employees. The City has cogently set out

its financial situation at that time and explained that it eliminated these nine positions because it was determined that the position or tasks could be assumed by other employees or consolidated. Washington cannot show that this proffered reason was a pretext for discrimination, especially in light of the fact that the City also fired eight white individuals at the same time, did not fill any of these positions, cut funding to charities, parks and recreation and other joint city-county agencies by 10%, required employees to pay 10% of their health insurance premiums, laid off additional employees in February 2009, and required employees to assume the custodial duties formerly provided by the custodians. Washington simply has failed to come forward with sufficient evidence to show that her termination was a result of any discrimination. Accordingly, the defendants' motion for summary judgment on this claim will be granted.

## H.     RETALIATION

Washington also claims that she was terminated in retaliation for filing this lawsuit. Again, the Court applies the *McDonnell-Douglas* analysis to this claim. In order to establish a *prima facie* case of retaliation, Washington must demonstrate that: (1) she engaged in protected activity; (2) the defendants knew of her exercise of a protected right; (3) the defendants subsequently took an adverse employment action against Washington or subjected her to severe or pervasive retaliatory harassment; and (4) there was a causal connection between the plaintiff's protected activity and the adverse employment action. *Barrett*, 556 F.3d at 516. There is no dispute that Washington has established the first three elements of a *prima facie* case.

However she is unable to prove causation, which requires "sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had [Washington] not" engaged in protected activity. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

Although Washington filed this lawsuit on September 3, 2008 and was terminated on November 8, 2008, this temporal proximity alone is not enough. *Mickey v. Ziedler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). Here, Washington was discharged as part of the November 2008 RIF, as one of a group of nine employees who were terminated. As the defendants point out, Washington was the only discharged employee who had engaged in protected activity. Washington has failed to come forward with evidence of any causal connection between the filing of her lawsuit and her termination. Accordingly, she cannot establish a *prima facie* case of retaliation. The defendants' motion for summary judgment on this claim will be granted.

## I.    INVASION OF PRIVACY

The Court previously dismissed Washington's privacy tort claims to the extent that they were based on the Conciliation Agreement [DE #13]. However, Washington was allowed to proceed on her invasion of privacy claims against Wise to the extent they were based on "other documents." During discovery, the "other documents" reportedly in Wise's possession were documents relating to the "cooking" incident, including written statements of both Washington and Wise, a report from the Human Resources department, and records concerning Wise's discipline from the incident. These records relate as much or more so to Wise than to Washington; certainly Wise had every right to possess these documents. Wise's possession of these records does not amount to an invasion of Washington's privacy.

Moreover, Washington has not alleged that Wise actually communicated any information, thus she cannot satisfy any publication requirement. Even if the records were discovered and copied, as Washington alleges, by another employee, she still cannot satisfy the publication requirement. In the context of invasion of privacy, publication requires private information to be "passed along

in a way substantially certain to become general knowledge either through dissemination to the public at large or to a multitude of persons." *Ghassomians v. Ashland Indep. Sch. Dist.*, 55 F.Supp.2d 675, 693 (E.D.Ky. 1998). "[A] communication to a single person or a small group of persons does not constitute publicity." *Id*.

Washington, however, argues that documents that Wise possessed may have been discarded or otherwise spoiled as evidence. Washington contends that she is entitled to a "missing records" presumption as to the content of the private and personal documents that were discarded. Other than Washington's bare allegations, there is simply no evidence that the defendants discarded or spoiled any evidence. Thus, Wise is entitled to summary judgment on Washington's claim for invasion of privacy.

## IV.     CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1)     the defendants' motion for leave to file excess pages [DE #42] is **GRANTED**;

(2)     the defendants' motion for summary judgment [DE #43] is **GRANTED**, and a judgment in favor of the defendants will be entered contemporaneously with this Opinion & Order; and

(3)     Washington's motion for partial summary judgment [DE #45] is **DENIED.**

This September 29, 2010.



**Signed By:**

*Karl S. Forester*

**United States Senior Judge**